UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOUGLAS MACARTHUR GUILE, II,

        Plaintiff,

v.

T. SPENCE et al.,

        Defendants.

_____/

Case No. 2:19-cv-138

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all Defendants other than Defendants Spence and Rolison. In addition, the Court will dismiss all claims other than the claim that Defendants Spence and Rolison used excessive force on Plaintiff in violation of the Eighth Amendment.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following MDOC employees at URF: Corrections Officers T. Spence and T. Rolison; Sergeant Unknown Koskela; Lieutenant Unknown Watson; Captain John A. Burke; Warden Connie Horton; and Assistant Deputy Warden (ADW) Dave LaLonde. He also sues Richard D. Russell, the Grievance Manager at the MDOC's Office of Legal Affairs.

Plaintiff alleges that he was assaulted by another prisoner at URF on June 20, 2018. About three weeks before the assault, Officer Spence started verbally harassing Plaintiff, making "debasing comments" about Plaintiff in front of other MDOC officials. (Compl., ECF No. 1, PageID.3.) Plaintiff ignored these comments.

The assault occurred when Plaintiff was playing cards with friends in the cardroom at URF. A prisoner who was unknown to Plaintiff, Jean Giles, approached and began punching Plaintiff in the head. Giles knocked Plaintiff off of his chair and onto the ground. Plaintiff did not fight back. Instead, he covered his face and head with his arms and raised his feet and legs to shield himself.

None of the officers in the area were aware of the assault until Plaintiff began yelling for help. Shortly thereafter, Officers Rolison and Spence entered the room. As they did so, Giles stopped punching Plaintiff and stood about five feet from Plaintiff. Rolison told Plaintiff and Giles to stop fighting and then Spence told Rolison to "tase" Plaintiff. (*Id.*, PageID.4.) At the time, Plaintiff was still on the ground, laying partly on his side and partly on his back, with his feet "somewhat" in the air. (*Id.*) Rolison deployed his taser, striking Plaintiff in the back with both taser probes.

2

After this incident, Spence wrote a report charging Plaintiff with a misconduct for fighting. In the report, Spence alleged that Plaintiff was positioned on his back, kicking Giles in the torso, while Giles was punching Plaintiff in the face. (*See* Misconduct Report, ECF No. 102, PageID.30.) Plaintiff, however, asserts that the report was false. He did not kick prisoner Giles.

Plaintiff was taken to the hospital for treatment for cuts on his face, but when he returned to the prison a few hours later, he was placed in segregation because of Spence's misconduct report.

Captain Burke investigated the incident and prepared a report indicating that Rolison responded to the assault with his taser drawn. (Critical Incident Report, ECF No. 1-2, PageID.32.) According to Burke, Rolison told Plaintiff and Giles to stop fighting and to get on the ground, but they did not do so. Because Plaintiff and Giles did not follow orders, Rolison deployed his taser on Plaintiff. After reviewing video of the incident, prison staff determined that Plaintiff did not fight Giles but that Giles assaulted Plaintiff. Burke reported these findings to Warden Horton on the evening of June 20.

The following day, June 21, ADW Lalonde notified URF Hearings Administrator John McCollum that "[a]fter reviewing the video, this does not appear to be a fight. We are going to pull the Fighting Misconduct on Guile and have a PC Request done." (6/21/2018 Lalonde Email to McCollum, ECF No. 1-2, PageID.40.) McCollum responded by stating that he would notify Warden Horton. (*Id.*)

On June 22, Warden Horton told McCollum that she was withdrawing the misconduct on Plaintiff. (6/22/2018 MDOC Mem., ECF No. 1-2, PageID.42.)

Due to miscommunication, error, or delay, Plaintiff was not released from segregation until June 25. After his release, Plaintiff discovered that his family had planned to

visit him but decided not to do so because they were told that they could not have physical contact with him due to his confinement in segregation.

Plaintiff filed a grievance claiming that Rolison wrongfully used a taser on him, and Spence instructed Rolison to do so. (Grievance Form, ECF No. 1-2, PagID.19.) Defendants Koskela and Watson responded to the grievance at Step I of the grievance process. According to the grievance response, Koskela reviewed the video of the incident and interviewed Rolison, who "stated his perception was that prisoner Guile was attempting to get back to his feet to go after the other prisoner." (Step I Grievance Response Supplemental Form, ECF No. 1-2, PageID.21.) Koskela and Watson concluded that "Guile was not wrongfully tased [because] the officer perception was that prisoner Guile was attempting to get back to his feet to go after the other prisoner that had assaulted him." (*Id.*) Plaintiff, however, claims that Defendants Koskela and Watson "misrepresent[ed] the truth of what is on the video[.]" (Compl., PageID.7.)

Plaintiff appealed the denial of his grievance to Step II. Defendant Horton upheld the denial of his grievance, finding "[n]o violation of policy." (Step II Grievance Response, ECF No. 1-2, PageID.26.) Plaintiff contends that Warden Horton assisted Defendants Koskela and Watson in "concealing the evidence that Defendants Rolison and Spence tased Plaintiff for no reason." (Compl., PageID.8.)

Plaintiff then filed an appeal to Step III. Defendant Russell denied that appeal. (Step III Grievance Response, ECF No. 1-2, PageID.28.) Plaintiff contends that Russell "falsely claim[ed] that Defendants Watson, Koskela, and Horton were right about their findings[.]" (Compl., PageID.8.)

Based on the foregoing allegations, Plaintiff makes the following claims: (1) Defendants deprived him of his rights to substantive and procedural due process under the

4

Fourteenth Amendment; (2) Defendants Spence and Rolison used excessive force on Plaintiff, in violation of the Eighth and Fourteenth Amendments, and failed to protect Plaintiff from the prisoner assault, in violation of the Eighth Amendment; (3) Defendant Spence told Rolison to tase Plaintiff in retaliation for Plaintiff's decision not to speak to Spence, in violation of Plaintiff's First Amendment rights; and (4) Defendants Koskela, Watson, Horton, and Russell concealed "the truth of what the video reveals" in retaliation for Plaintiff's statement in his grievance that he intended to sue Defendants Spence and Rolison, in violation of Plaintiff's First Amendment rights. (Compl., PageID.11.)

As relief, Plaintiff seeks a declaration that Defendants violated his constitutional rights, as well as compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

5

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

#### 1. Excessive Force (Use of the Taser)

Plaintiff contends that Defendants Spence and Rolison used excessive force on him when deploying the taser. Spence allegedly ordered the use of the taser and Rolison complied.

Plaintiff cites both the Eighth and Fourteenth Amendments as the basis for his excessive force claim, but only the Eighth Amendment applies. "Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments – the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in 'gray area[s]' around the two." *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015). Claims of excessive force brought by "convicted prisoners" like Plaintiff are analyzed under the Eighth Amendment, which "forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and

6

specifically conduct that is malicious and sadistic." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The unnecessary and wanton infliction of pain includes actions that are "totally without penological justification." *Rhodes*, 452 U.S. at 346.

The Court finds that Plaintiff's excessive force claim against Defendants Spence and Rolison survives screening with respect to use of the taser on Plaintiff.

### 2. Failure to Protect

To the extent Plaintiff contends that Defendants are liable for failing to protect him from the prisoner assault, he does not state a claim. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish liability, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766.

Plaintiff alleges no facts indicating that Defendants were aware of a substantial risk that prisoner Giles would attack Plaintiff. Nor does he allege that they failed to intervene when they became aware of the assault. To the contrary, Plaintiff alleges that none of the prison officials in the area were aware of the assault when it occurred. Officers Spence and Rolison entered the room to intervene after Plaintiff started yelling for help. Accordingly, Plaintiff's allegations do not permit a reasonable inference that Defendants were deliberately indifferent to Plaintiff's safety.

Plaintiff contends that Spence and Rolison were obligated to "observe what the prisoners are doing at all times" (Compl., PageID.11), but he alleges no facts indicating that Defendants were aware of a substantial risk that Plaintiff might be assaulted by another prisoner. In effect, Plaintiff is claiming that Defendants were negligent in performing their duties. However, negligence is not enough to state a claim under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (holding that a prison official's "lack of due care" in preventing a prisoner from attacking the plaintiff "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent"); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that an Eight Amendment violation requires a "state of mind more blameworthy than negligence.").

### B. Procedural Due Process

Plaintiff claims that Defendants Burke, LaLonde, and Horton deprived him of his right to procedural due process under the Fourteenth Amendment in connection with his confinement in segregation. They allegedly failed to take action to have Plaintiff immediately released from segregation when they became aware that the video did not support the misconduct charge against him. Plaintiff was confined in segregation for a total of five days, but he could have been released sooner if Defendants had acted more quickly. Due to his confinement, he missed a visit from his family.

8

The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87.

Plaintiff does not allege that his brief confinement in segregation will have any impact on the duration of his sentence. Nor does he allege circumstances indicating that his confinement imposed an "atypical and significant hardship."

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively short period of time does not require the protections of due process. *See, e.g.*, *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (punitive detention for 30 days followed by placement in administrative segregation); *Joseph*, 410 F. App'x at 868 (61 days in segregation). It has also held that confinement in segregation for much longer periods of time does not implicate a liberty interest. *See Jones v. Baker*, 155 F.3d at 812-23 (6th Cir. 1998) (two years of segregation while the inmate

9

was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).

The duration of Plaintiff's confinement in segregation is far shorter than the time periods at issue in *Sandin*, *Rimmer-Bey*, *Jones*, and *Joseph*, which were considered not atypical and significant. Plaintiff alleges no facts about the particular circumstances of his confinement that would distinguish it from the type of confinement at issue in those cases. It follows, therefore, that Plaintiff's brief confinement in segregation did not give rise to a liberty interest protected by due process.

Plaintiff notes that he could not have physical contact with his family, which caused them to forgo a visit. However, a lack of physical contact with family members and visitors is an ordinary and expected consequence of imprisonment. It is the sort of deprivation that a prisoner "should reasonably anticipate receiving" during his incarceration. *Hewitt*, 459 U.S. at 468. It is not atypical and significant in relation to the ordinary incidents of prison life. Consequently, Plaintiff's confinement in segregation did not implicate a protected liberty interest.

In short, Plaintiff has not alleged that he was deprived of an interest protected by due process. Without a protected interest at stake, Plaintiff fails to state a procedural due process claim. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007). In other words, the Fourteenth Amendment did not require Defendants to provide any process to Plaintiff. Even though prison staff did not immediately release Plaintiff from segregation when they determined that the misconduct ticket should be withdrawn, he suffered no constitutional harm from being confined in segregation for a few days.

### C. Retaliation

Plaintiff claims that Defendant Spence told Defendant Rolison to tase Plaintiff in retaliation for Plaintiff's choice not to respond to Spence's verbal harassment. Plaintiff also claims that Defendants Koskela, Watson, Horton, and Russell "knowingly concealed the truth of what the video reveals" in retaliation for Plaintiff's statement in his grievance that he intended to sue Defendants Spence and Rolison.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Spence

Plaintiff's claim against Defendant Spence fails because Plaintiff has not identified any protected conduct as a motive for Spence's actions. Choosing not to speak or act in the face of harassing statements is not protected conduct. It does not qualify as an exercise of, or attempt to vindicate, any of Plaintiff's constitutional rights, such as the right to speak, associate, or petition for redress of grievances. *See Thaddeus-X*, 175 F.3d at 391-96 (summarizing a prisoner's First Amendment rights and holding that assisting an uneducated prisoner with filing a lawsuit qualifies as protected conduct because it is "an attempt to vindicate [the] clearly established right of access

11

to the courts"). Indeed, silence and inaction is usually the intended *consequence* of retaliatory conduct, not the motive for it.

Moreover, there is no plausible connection between Spence's actions and Plaintiff's silence. Plaintiff's assertion that Spence was motivated by Plaintiff's silence is wholly conclusory and implausible.

### 2. Koskela, Watson, Horton, Russell

Plaintiff fails to state a retaliation claim against Defendants Koskela, Watson, Horton, and Russell because he does not allege an adverse action. An adverse action is one that is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Here, Plaintiff contends that Defendants "concealed" the contents of the video in response to his grievance, but Defendants' grievance responses show that Defendants merely credited Rolison's perception of Plaintiff's actions and determined that Rolison did not use excessive force. They did not conceal the video itself. Indeed, other officials reviewed the same video and concluded that the fighting misconduct charge against Plaintiff should be dropped. Moreover, the only consequence of Defendants' actions was the denial of Plaintiff's grievance and grievance appeals; denying a grievance does not constitute an adverse action for purposes of a retaliation claim. *See Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (citing *Burgos v. Canino*, 358 F. App'x 302, 306-07 (3d Cir. 2009)); *Ivory v. Bastian*, No. 2:10-cv-299, 2011 WL 766531, at *7 (W.D. Mich., Feb. 25, 2011). It does not have any significant adverse consequences for the prisoner.

Furthermore, Plaintiff's contention that Defendants denied his grievance and grievance appeals because he made a statement about filing a lawsuit against other prison officials is simply a conclusion with no factual support. Thus, Plaintiff fails to state a retaliation claim.

12

**D. Substantive Due Process**

Finally, Plaintiff contends that Defendants violated his right to substantive due process. Specifically, Spence ordered Rolison to tase Plaintiff and Rolison did so. Spence and Rolison allegedly prepared false reports accusing Plaintiff of kicking prisoner Giles. Burke allegedly failed to review the video of the incident and accepted Rolison's version of the incident when preparing the critical incident report. In addition, Defendants Koskela, Watson, Horton, and Russell allegedly concealed video evidence that Plaintiff did not kick Giles, and allowed Burke's false report to stand, all as a means to retaliate against Plaintiff for informing them in his grievance that he intended to sue Spence and Rolison.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). Framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, specific constitutional amendments apply to most of Plaintiff's claims. As discussed above, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff for his claim against Spence and Rolison regarding Rolison's use of the taser. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (holding that the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety). In addition, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process, should be applied. *See Thaddeus-X*, 175 F.3d at 945 (holding that the standard for substantive due process claims does not apply to retaliation claims).

There is no specific constitutional amendment that would apply to Plaintiff's claims that Defendants Spence, Rolison, and Burke prepared false reports, but Plaintiff does not state a substantive due process claim against them because he does not allege conduct that shocks the conscience. There is no bright-line test for when conduct meets this standard; it depends on the facts of the case. *Bowers v. City of Flint*, 325 F.3d 758, 767 (6th Cir. 2003). But the Supreme Court has said that "conduct intended to injure in some way unjustifiable by any government

interest is the sort of official action most likely to rise to the conscience shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Accusing Plaintiff of kicking another prisoner where that prisoner was assaulting Plaintiff, where Plaintiff himself alleges that he was on his back, "attempting to keep his attacker at bay with legs" (Compl., PageID.4), and where there was a video recording of the incident that would be reviewed by a hearing officer, hardly qualifies as conscience-shocking behavior. Thus, Plaintiff does not state a substantive due process claim against Defendants Spence, Rolison, and Burke.

Similarly, there is nothing conscience-shocking about denying Plaintiff's grievance and grievance appeals, as Koskela, Watson, Horton, and Russell did. Indeed, the Sixth Circuit has indicated that § 1983 liability may not be imposed where a prison official's only involvement is the denial of an administrative grievance and failure to act based upon the information contained in the grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, these defendants did not "conceal" the video evidence as Plaintiff claims. Instead, they determined that Officer Rolison did not use excessive force because Rolison stated that his "perception was that [Plaintiff] was attempting to get back to his feet to go after the other prisoner." (Step I Grievance Response, ECF No. 1-2, PageID.21.) The reasonableness of that perception is somewhat supported by Plaintiff's allegation that his feet were in the air when Rolison deployed his taser. Presumably, the video shows the same thing. In short, nothing about Defendants' actions rises to the level of conscience-shocking behavior. Thus, Plaintiff does not state a substantive due process claim against any of the defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all claims and defendants, other than the claim against Defendants Spence and Rolison that they used excessive force on Plaintiff in violation of the Eighth Amendment, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.

Dated:   September 12, 2019          /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      Chief United States District Judge